UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/9/2020

UNITED STATES OF AMERICA,

v.

GERALD TISDALE,

                Defendant.

No. 15-cr-334 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

On August 9, 2020, Defendant Gerald Tisdale filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), seeking compassionate release in light of COVID-19. *See* Dkt. 186. The Government opposes the request. *See* Dkt. 188. For the reasons that follow, Mr. Tisdale's motion is denied.

## BACKGROUND

In February 2016, Mr. Tisdale pled guilty to a conspiracy to possess with intent to distribute heroin. *See* Def. Mot. at 8; Gov't Opp'n at 2. In July 2016, he was sentenced to 120 months imprisonment. *See* Def. Mot. at 10; Gov't Opp'n at 2. At the time of his sentencing, Mr. Tisdale had previously served a 20-year sentence for a similar crime, specifically in connection with a narcotics conspiracy in which he was "the leader of a crack organization operating in East Harlem" that "sold thousands of vials of crack daily, had numerous weapons to protect its trade, and did real damage to that community." *See* Dkt. 131 ("Sentencing Tr.") at 26-27; *see also* Def. Mot. at 8. Separate from that conviction, Mr. Tisdale also has an additional prior narcotics conviction. *See* Gov't Opp'n at 2. During the July 2016 sentencing proceeding, the Court specifically noted the "harm to the community [caused] by Mr. Tisdale's criminal conduct," explaining that, for at

least three years, he had run a "drug-trafficking organization in Harlem that trafficked in large, multikilogram quantities of heroin," which, it explained, is "not a victimless crime." Sentencing Tr. at 28. The Court continued by stating that crimes such as these "destroy neighborhoods and the people in them," "create[] drug addiction, spawn[] violence, and destroy[] people and families and communities." *Id.* at 28-29. The Court also noted that Mr. Tisdale "played an important role in that destructive process." *Id.* at 29.

Mr. Tisdale is currently housed at FCI Schuylkill, *see* Def. Mot. at 1 n.1, and his scheduled release date is December 24, 2023, *see id.* at 6, 11.[1]

Mr. Tisdale, a 49-year-old man, maintains that he suffers from "a chronic history of hypertension and high cholesterol," and that he is "designated by the Bureau of Prisons ['BOP'] for chronic care." Def. Mot. at 4-5. He further asserts that, for his chronic hypertension, he is administered "Hydrochlorothiazide" each day. *See id.* Mr. Tisdale also states that he is administered medication for a "chronic thyroid condition," as well as for "arthritis in his knee." *Id.* at 5. Nonetheless, the instant application appears to be based primarily on Mr. Tisdale's hypertension. *See id.* at 6.

In April 2020, Mr. Tisdale submitted a *pro se* request for compassionate release to the Warden at FCI Loretto, where he was housed at the time. *See* Def. Mot. at 1 n.1; Gov't Opp'n at 3. The BOP denied that request on April 28, 2020. *See* Def. Mot. at 13; Gov't Opp'n at 3. On August 7, 2020, Mr. Tisdale's counsel also submitted a compassionate release request to the Warden at FCI Schuylkill, seeking that the "Warden file a motion with the United States District Court for the Southern District of New York for a reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)." *See* Mot. at 1 n.1; Gov't Opp'n at 3.

---

[1] Mr. Tisdale states on page 1 of his motion that his release date is August 24, 2023, *see* Def. Mot. at 1, but the Court assumes this to be an error, as he states elsewhere that his projected release date is December 24, 2023, *see id.* at 6, 11, and the Government concurs with the December 2023 date, *see* Gov't Opp'n at 8.

2

On August 9, 2020, Mr. Tisdale filed his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), *see* Dkt. 186, and on August 14, 2020, the Government filed its opposition, *see* Dkt. 188.

**DISCUSSION**

It is well established that "[a] court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Under 18 U.S.C. § 3582(c)(1)(A), however, a court may reduce a term of imprisonment—including by "impos[ing] a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment"—where (1) "extraordinary and compelling reasons" exist to "warrant such a reduction," (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a), to the extent such factors apply. *See* 18 U.S.C. § 3582(c)(1)(A). A court may do so "upon motion of the defendant" either "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See* 18 U.S.C. § 3582(c)(1)(A).

As mentioned, Mr. Tisdale filed an internal request for compassionate release with the BOP, which was denied on April 28, 2020. *See* Def. Mot. at 13; Gov't Opp'n at 3. Mr. Tisdale's counsel also submitted a second internal request to the Warden at FCI Schuylkill on August 7, 2020. *See* Mot. at 1 n.1; Gov't Opp'n at 3. Presumably based on the April 2020 internal request, the Government concedes that Mr. Tisdale "has exhausted his administrative remedies" pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* Gov't Opp'n at 3. There is thus no dispute that this Court has jurisdiction to hear his motion.

3

Turning to the merits of Mr. Tisdale's motion, the Court cannot conclude that compassionate release is warranted. To award Mr. Tisdale the relief he seeks, the Court must find that "extraordinary and compelling reasons warrant" compassionate release, consider the factors set forth in 18 U.S.C. § 3553(a), and ensure that release is consistent with the Sentencing Commission's policy statements. *See* 18 U.S.C. § 3582(c)(1)(A)(i). While the statute does not define "extraordinary and compelling reasons," "Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence." *United States v. Butler*, No. 19-cr-834-10 (PAE), 2020 WL 1689778, at *1 (S.D.N.Y. Apr. 7, 2020). The relevant policy statement provides four general circumstances that constitute "extraordinary and compelling reasons": the "medical condition of the defendant," "age of the defendant," "family circumstances," and "other reasons." U.S.S.G. § 1B1.13 cmt. n.1. As pertinent here, the policy statement provides that a "medical condition" warranting release includes, among other things, one where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The defendant must also show, however, that he is "not a danger to the safety of any other person or to the community[.]" U.S.S.G. § 1B1.13(2). Ultimately, it is the defendant's "burden to show he is entitled to a sentence reduction." *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

As noted above, Mr. Tisdale is 49 years old and maintains that he suffers from "a chronic history of hypertension and high cholesterol," among other things.[2] Def. Mot. at 4; *see also id.* at

---

[2] The Court does not address Mr. Tisdale's other asserted medical conditions, such as his "chronic thyroid condition" or his arthritis, because Mr. Tisdale concedes that "there is no data which suggests that a thyroid condition is a pre-existing medical gateway condition that places a person at greater risk of contracting the COVID-19 infection," *see* Def. Mot. at 5-6, nor does he otherwise mention his arthritis in connection with this application.

4

11 (asserting that Mr. Tisdale suffers from "chronic hypertension"). Courts in this district have held that hypertension may establish an "extraordinary and compelling reason" warranting release. *See, e.g.*, *United States v. Gonzalez*, No. 05-CR-1292 (JMF), 2020 WL 2766048, at *1 (S.D.N.Y. May 28, 2020) (granting compassionate release motion where defendant suffered from "chronic hypertension and obesity"); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release motion where defendant suffered from "hypertension, . . . high blood pressure, and high cholesterol"). The Government acknowledges that Mr. Tisdale's hypertension, in general, "places him in a category of potentially heightened risk for COVID-19," but argues that his "particular condition," as well as "the circumstances at FCI Schuylkill," "do not warrant a finding of extraordinary and compelling circumstances." Gov't Opp'n at 6. Even assuming that Mr. Tisdale's hypertension may constitute an "extraordinary and compelling reason," however, the Section 3553(a) factors nonetheless weigh against granting his request.

Pursuant to § 3553(a), a court must consider the following factors in imposing a sentence: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed" to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the more effective manner"; (3) "the kinds of sentences available"; (4) "the kinds of sentence and the sentencing range established" for the applicable offense category as set forth in the guidelines; (5) "any pertinent policy statement . . . by the Sentencing Commission"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any

5

victims of the offense." 18 U.S.C. § 3553(a). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release and whether compassionate release would undermine the goals of the original sentence." *United States v. Daugerdas*, No. 09-CR-581, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations, internal quotation marks, and citation omitted).

Here, the § 3553(a) factors weigh against granting Mr. Tisdale's motion. Most importantly, the Court cannot conclude that Mr. Tisdale is "not a danger to the safety of . . . the community[.]" U.S.S.G. § 1B1.13(2). As Mr. Tisdale acknowledges, "[t]here is no question that [he] was involved in serious criminal conduct." Def. Mot. at 16. Indeed, as the Court noted at sentencing, Mr. Tisdale's criminal conduct resulted in serious harm to the community, as he "ran a drug-trafficking organization in Harlem that trafficked in large, multikilogram quantities of heroin." Sentencing Tr. at 28. This type of crime, the Court explained, "destroy[s] neighborhoods and the people in them," "creates drug addiction, spawns violence, and destroys people and families and communities," and Mr. Tisdale "played an important role in that destructive process." *Id.* at 28-29. In imposing a sentence of 120 months—below the applicable Guidelines range—the Court balanced the "very serious crime" Mr. Tisdale had committed and "the harm to the community" with the fact that Mr. Tisdale was a "flawed but also beloved man who grew up amidst a malaise of poverty, crime, and drugs." *See id.* at 29-30. Notably, however, Mr. Tisdale engaged in such serious criminal activity *after* he had finished serving a substantial sentence for a prior, similar conviction. Moreover, although the Court is pleased to hear that Mr. Tisdale has completed BOP "re-entry courses and anti-recidivism programs" while incarcerated, it is nonetheless unpersuaded by his assertions that his "institutional records indicate that he poses no risk to the general public." *See* Def Mot. at 11. A grant of compassionate release here would be inconsistent with the Sentencing Commission's applicable policy statements. Although the Court is sympathetic to his

6

medical condition and the heightened risk of harm that the virus might pose if he were to contract it, the relevant § 3553(a) factors "outweigh [any] 'extraordinary and compelling reasons' warranting compassionate release," and an early release "would undermine the goals of [Mr. Tisdale's] sentence." *Ebbers*, 432 F. Supp. 3d at 430-31.  Accordingly, Mr. Tisdale's motion for compassionate release is denied.

## CONCLUSION

For the foregoing reasons, Mr. Tisdale's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.  The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 186.  Mr. Tisdale's counsel shall mail a copy of this Order to him.

SO ORDERED.

Dated:   September 9, 2020
         New York, New York

                                            Ronnie Abrams
                                            United States District Judge